UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                                       :

DENTSPLY INTERNATIONAL INC.,        :
                                  Plaintiff,    :
                                                                                      :
                -against-                                    :
                                                                                         :
DENTAL BRANDS FOR LESS LLC d/b/a  :
DENTAL WHOLESALE DIRECT,             :
                                  Defendant. :
                                                                                             :
------------------------------------------------------------X
                                                                                             :
DENTAL BRANDS FOR LESS LLC d/b/a  :
DENTAL WHOLESALE DIRECT,             :
                          Counterclaimant, :
                                                                         :
              -against-                                 :
                                                                    :
DENTSPLY INTERNATIONAL INC.,        :
                     Counterclaim Defendant. :
                                                                         :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/27/2016

15 Civ. 8775 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

      Dentsply International Inc. ("Dentsply") filed suit against Dental Brands for Less d/b/a Dental Wholesale Direct ("Dental Brands") over Dental Brands' resale of Dentsply's dental products without Dentsply's authorization. Dental Brands asserts three counterclaims against Dentsply, alleging that Dentsply's authorized distributors conspired to fix the minimum price at which to sell Dentsply's products and that Dentsply was a member of this conspiracy in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Dental Brands also asserts false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1), and commercial defamation in violation of New York law based on Dentsply's alleged misrepresentations concerning Dental Brands' resale of Dentsply's products. Dentsply moves to dismiss the counterclaims under Federal Rule of

Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, Dentsply's motion is granted in part and denied in part.

I. BACKGROUND

The following facts are taken from Defendant's Answer to the Second Amended Complaint, which contains the Counterclaims (the "Counterclaims"), and accompanying exhibits. For purposes of the present motion, the Counterclaims' allegations are assumed to be true.

A. Dentsply's and Dental Brands' Businesses

Dentsply manufactures consumable dental supply products. As of 2014, Dentsply had authorized twenty-four distributors to retail its products to dentists within the United States. Three of these distributors, Benco Dental Supply Co. ("Benco"), Henry Schein, Inc. ("Schein") and Patterson Dental Co. ("Patterson"), are responsible for 80% to 90% of the retail sales of Dentsply's products in the United States.

Dental Brands is a discount dental product retailer. Dental Brands sells Dentsply's products in the United States, even though Dentsply has not authorized Dental Brands to do so. Dental Brands acquires Dentsply's products overseas and then resells them domestically. Dental Brands' arbitrage is made possible because Dentsply sells its products overseas at substantially lower prices than its price in the United States. Dental Brands sells Dentsply's products in the United States at prices 20% to 65% below the prices offered by Dentsply's authorized distributors.

Dentsply has sent cease and desist letters to Dental Brands, as well as other unauthorized distributors, threatening to sue them for trademark infringement if they did not stop selling Dentsply's products. After Dental Brands continued to sell Dentsply's products, Dentsply

brought the instant action.  Dental Brands responded by asserting the counterclaims at issue on this motion to dismiss.

**B.     The Counterclaims**

According to the Counterclaims, Dentsply's authorized distributors -- including Schein, Benco and Patterson -- "agreed among themselves to sell Dentsply['s] [p]roducts to dentists at artificially high fixed prices."  Further, these authorized dealers brought Dentsply into their conspiracy to enforce their price fixing agreement.

Dentsply furthers the horizontal price-fixing conspiracy in two ways.  First, Dentsply engages in a "disinformation campaign" against Dental Brands and other unauthorized distributors through commercial advertising, print media, e-mails, trade shows and face-to-face meetings, all directed at dentists.  In these communications, Dentplsy allegedly makes misrepresentations about its products sold by Dental Brands, specifically, that these products (1) are "materially different" and "inferior" to Dentsply's products sold by its authorized distributors, (2) have been "mishandled" and (3) present an "immediate safety and health risk to their patients and puts dentists at risk of liability to patients."  According to the Counterclaims, these statements are not true and Dentsply's products sold by Dental Brands are "identical" to those sold by authorized distributors.

Second, Dentsply furthers the distributors' horizontal conspiracy by threatening and filing litigation to stop unauthorized distributors from selling its products.  These lawsuits allege tortious interference and trademark claims.  This litigation is allegedly instituted "without regard for the merits but rather for the purpose of injuring" the unauthorized distributors.

The price-fixing agreement is "coordinated" at forums "held since at least 2008," which the Counterclaims refer to as the "Dental Trade Alliance *Grey Market Task Force* and Dental

Industry Association of Canada *Gray Market Summits*."[1] "With the participation of Schein, Patterson and Benco, the dental manufacturers[, including Dentsply,] discuss [at these forums] implementing global pricing strategies, tracking companies supplying discount dealers with the dental manufacturers' products and afterwards cutting-off them, and eliminating dealers discounting the manufacturers' dental supply products."

## II.     STANDARD

A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a claim in a complaint. *See Keep on Kicking Music, Ltd. v. Hibbert*, No. 15 Civ. 7464, 2016 WL 4386047, at *2 (S.D.N.Y. Aug. 17, 2016) ("A motion to dismiss counterclaims is governed by the familiar standards of Rule 12(b)(6)."). "On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

---

[1]    The term "gray market" refers to the practice of unauthorized distributors reselling dental products that they have acquired from overseas markets.

**III.     DISCUSSION**

   **A.     Count One – Horizontal Price-Fixing Agreement**

Count One is dismissed because the Counterclaims fail to plausibly allege that Dental Brands suffered an antitrust injury necessary to confer antitrust standing.  "[A]ntitrust standing is a threshold, pleading-stage inquiry and when a [claim] by its terms fails to establish this requirement we must dismiss it as a matter of law."  *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 75 (2d Cir. 2013) (quoting *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (en banc)).  "To satisfy the antitrust standing requirement, a private antitrust plaintiff must plausibly allege that (i) it suffered an antitrust injury and (ii) it is an acceptable plaintiff to pursue the alleged antitrust violations," which requires showing that the plaintiff is "an 'efficient enforcer' of the antitrust laws."  *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 157–58 (2d Cir. 2016).

   Courts in the Second Circuit employ a "three-step process for determining whether a plaintiff has sufficiently alleged antitrust injury."  *Gatt Commc' ns*, 711 F.3d at 76.  "First, the party asserting that it has been injured by an illegal anticompetitive practice must identify the practice complained of and the reasons such a practice is or might be anticompetitive."  *Id.* (internal quotation marks and alteration omitted).  Second, courts "identify the actual injury the plaintiff alleges," i.e., "the ways in which the plaintiff claims it is in a worse position as a consequence of the defendant's conduct."  *Id.*  (internal quotation marks omitted).  Third, courts compare the "anticompetitive effect of the specific practice at issue" to "the actual injury the plaintiff alleges."  *Id.* (internal quotation marks omitted).  "It is not enough for the actual injury to be causally linked to the asserted violation," but instead, "in order to establish antitrust injury, the plaintiff must demonstrate that its injury is of the type the antitrust laws were intended to

5

prevent and that flows from that which makes defendants' acts unlawful." *Id.* (internal quotation marks and alteration omitted).

Although "[c]ompetitors . . . in the market where trade is allegedly restrained are presumptively the proper plaintiffs to allege antitrust injury," *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d at 158 (internal quotation marks omitted), "it is axiomatic that the antitrust laws do not protect a competitor against competition," *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 122 (2d Cir. 2007). Thus, a private antitrust plaintiff's status as a competitor is not dispositive. A court "can ascertain antitrust injury only by identifying the anticipated anticompetitive effect of the specific practice at issue and comparing it to the actual injury the plaintiff alleges." *Id.*

Here, the illegal anticompetitive practice alleged by Dental Brands is a horizontal minimum price-fixing conspiracy. According to the Counterclaims, Dentsply's authorized distributors agreed "not to compete" on the price at which they sold Dentsply's products and to "charge artificially inflated prices." Price-fixing agreements are anticompetitive because "horizontal coordination may inflate prices to supracompetitive levels." *Todd v. Exxon Corp.*, 275 F.3d 191, 213–14 (2d Cir. 2001); *see also United States v. Apple, Inc.*, 791 F.3d 290, 326 (2d Cir. 2015) (noting that horizontal price-fixing conspiracies "concentrate the power to set prices among the conspirators, including the 'power to control the market and to fix arbitrary and unreasonable prices'" (quoting *United States v. Trenton Potteries Co.*, 273 U.S. 392, 397 (1927))), *cert. denied*, 136 S. Ct. 1376 (2016).

Dental Brands does not allege that it purchased Dentsply's products at supracompetitive prices. To the contrary, the Counterclaims allege that Dental Brands buys Dentsply's products at prices substantially lower than the domestic prices allegedly fixed by the authorized distributors.

The Counterclaims allege that Dental Brands' injury is (1) lost business caused by Dentsply's alleged misrepresentations about Dental Brands and (2) the costs attributable to the instant litigation.

Assuming *arguendo* that the Counterclaims adequately allege the existence of a price-fixing agreement, they still fail to state a claim because Dental Brands' alleged injury does not flow from the anticompetitive impact that the antitrust laws were designed to prevent. Minimum price-fixing schemes are unlawful because they can force *purchasers* of a product to pay supracompetitive prices. *Gatt Commc'ns,* 711 F.3d at 77. Dental Brands is a competitor of the alleged price fixers and "has not been forced to pay higher prices for a product." *Id.* As the Supreme Court has made clear, a competitor cannot "recover damages for any conspiracy by [antitrust defendants] to charge higher than competitive prices in the American market. Such conduct would indeed violate the Sherman Act, . . . but it could not injure [plaintiffs]: as [defendants'] competitors, [plaintiffs] stand to gain from any conspiracy to raise the market price . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582–83 (1986) (internal citations omitted). Dental Brands, as a competitor, "may not complain of conspiracies that . . . set minimum prices at *any* level," *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 337 (quoting *Matsushita*, 475 U.S. at 585 n. 8), because such a conspiracy would enable Dental Brands also to charge higher than competitive prices.

Where, as here, a claimant alleges a price-fixing agreement, courts refuse to conflate the injury that flows from the agreement with injuries caused by acts that are independent of the agreement. *See, e.g.*, *Arista Records LLC v. Lime Grp. LLC*, 532 F. Supp. 2d 556, 563 (S.D.N.Y. 2007) (Lynch, J.); *Disenos Artisticos E Industriales, S.A. v. Work*, 676 F. Supp. 1254, 1277 (E.D.N.Y. 1987) (citing *Matsushita*, 475 U.S. at 582) ("Evidence of a price-fixing conspiracy, by

itself, would not be sufficient [to establish antitrust injury] even if [other anticompetitive acts] were deemed part of the larger price-fixing conspiracy because [the distributor] has suffered no injury from the alleged price-fixing."); *cf. Port Dock*, 507 F.3d at 123 (refusing to find antitrust injury based on a monopolization claim where challenged conduct was "something the manufacturer could have just as well done without having monopoly power"). Injuries to a claimant that flow from wrongs other than anticompetitive conduct do not confer antitrust standing. "Although [a claimant] may be able to assert state tort law claims against [a defendant] for such conduct, it lacks standing to challenge this conduct under the federal antitrust laws." *Arista Records*, 532 F. Supp. 2d at 574 (holding that plaintiff had failed to plead antitrust injury where plaintiff alleged in part that defendants had conspired to set fixed prices for certain music distribution services and also alleged defendants furthered the conspiracy by falsely claiming that plaintiff promoted child pornography and was a pirate).

     Here, Dental Brands has not suffered antitrust injury. Dental Brands' alleged injuries -- lost business and litigation costs -- may be injuries caused by Dentsply and associated with the alleged price fixing, but they are not antitrust injuries. Dental Brands' injuries do not flow from anticompetitive conduct and are caused by independent wrongs, such as misstatements. Dental Brands has failed to allege facts sufficient to show that these damages are the types of injuries the antitrust laws were designed to prevent. *See id.*; *Am. Med. Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800, 2007 WL 683974, at *5 (S.D.N.Y. Mar. 5, 2007) ("[I]t cannot be said that the litigation costs incurred by Counterclaim Plaintiffs are injuries that antitrust laws were intended to prevent."). Accordingly, Count One is dismissed. Because the issue of antitrust standing is dispositive, Dentsply's other arguments are not addressed.

B.     Count Two – False Advertising Claim

Dentsply's motion to dismiss Count Two is denied because the Counterclaims plausibly state a false advertising claim under the Lanham Act. Section 43(a) of the Lanham Act states:

> Any person who . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B); *see Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56 (2d Cir. 2002). "To establish false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the plaintiff must first demonstrate that the statement in the challenged advertisement is false." *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014). "Falsity may be established by proving that (1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true, it is likely to deceive or confuse customers." *Id.* (quoting *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001)).

The Counterclaims plausibly allege that Dentsply made literally false statements -- through emails, at trade shows, and in face-to-face meetings aimed at dentists -- that Denstply's products sold by Dental Brands "are mishandled" and "present[] an immediate safety and health risk to their patients." The Counterclaims allege that these statements are literally false because Dental Brands "stores and ships" the Dentsply's products "following the same directions" that Dentsply provides to its authorized distributors; because Dental Brands "does not sell dental product less than twelve months before its expiration date" and because the Dentsply products Dental Brands offers are not any different in quality, composition or formulation from the Dentsply products sold by authorized distributors. Accepting these allegations as true, the Counterclaims plausibly allege a false or misleading representation for purposes of a claim under

9

the Lanham Act.  *See Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 271 (E.D.N.Y. 2014) (finding that allegation that the defendant had made a statement that plaintiff's "products are of poor quality, are unreliable and sluggish, and are inferior to [the defendant's products]" constituted a false or misleading statement for purposes of a false advertising claim).

Dentsply advances two arguments as to why the Counterclaims do not allege falsity.  Neither argument has merit.  First, Dentsply asserts that the exhibits attached to the Counterclaims, which it claims are the alleged false advertisements, do not even reference Dentsply.[2]  This argument, however, misconstrues the Counterclaims.  Regardless of whether the attached exhibits mention Dental Brands, the Counterclaims also allege that Dentsply made other misrepresentations about Dental Brands' products at trade shows and through other means, such as by e-mail and face-to-face meetings with dentists.  On a Rule 12(b)(6) motion, these factual allegations are accepted as true, *see Littlejohn*, 795 F.3d at 306, and sufficiently allege that Dentsply made false or misleading statements about Dental Brands.

Second, Dentsply argues that the Counterclaims' allegations of falsity are implausible in light of a district court's holding in *Heraeus Kulzer LLC v. Omni Dental Supply*, No. 12 Civ. 11099, 2013 WL 3305284 (D. Mass. July 1, 2013), which concerned a dental product manufacturer's trademark infringement claim against an unauthorized distributor.  *Heraeus*

---

[2] Of the three exhibits to which Dentsply is referring, two do not explicitly reference Dental Brands.  The parties dispute whether the third exhibit references Dental Brands.  That exhibit -- which is a list that Dentsply distributes to dentists identifying unauthorized dealers -- specifies that "Dentalwholesalersdirect.com" is unauthorized to sell Dentsply's products.  According to Exhibit 5 to the Counterclaims, Dental Brands did business under the name Dental Wholesale Direct and sold its product through the website dentalwholesaledirect.com.  In light of the Counterclaims' allegations of other false or misleading statements made by Dentsply, the Court need not address at this stage the Counterclaims' allegation that Dentsply's inclusion of "dental*wholesalers*direct.com" on the list constitutes a reference to Dental Brand's website "dental*wholesale*direct.com."

*Kulzer LLC* is inapposite because it involved different trademarks and different parties on a motion for summary judgment, *see id.* at *5–*6, while this case involves the sufficiency of the pleadings on a motion to dismiss.

In addition to falsity, the Counterclaims adequately plead the remaining elements of a false advertising claim -- that the challenged statements (1) "misrepresented an inherent quality or characteristic of the product," (2) were "placed . . . in interstate commerce" and (3) "the plaintiff has been . . . injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Merck Eprova*, 760 F.3d at 255. First, statements regarding the safety of the product and potential liability that may stem from their use "are likely to 'influence the purchasing decisions of consumers,' and are thus 'material' for purposes of § 43(a)." *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, No. 16 Civ. 57, 2016 WL 3773394, at *25 (S.D.N.Y. July 8, 2016) (quoting *Mylan Pharm., Inc. v. Procter & Gamble Co.*, 443 F.Supp.2d 453, 462 (S.D.N.Y. 2006)). Second, the assertion that these advertisements were disseminated through e-mail is sufficient to allege at this stage of the litigation that they were placed in interstate commerce. *See id.* ("[T]here is no dispute that posting to internet fora placed the statements in interstate commerce." (quoting *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08 Civ. 0442, 2016 WL 815205, at *7 (S.D.N.Y. Feb. 29, 2016))). Third, the Counterclaims allege that Dental Brands suffered "lost sales, profits, and business opportunities, and harm to its business goodwill and reputation." Because the Counterclaims adequately plead each element of Dental Brands' false advertising claim, Dentsply's motion to dismiss is denied.

### C. Count Three – New York Commercial Disparagement and Defamation Claim

Dentsply's motion to dismiss Count Three, the commercial disparagement and

defamation claim, is granted because the Counterclaims fail to plead special damages, as required by New York law.

Under New York law, "defamation and disparagement in the commercial context" are two distinct, albeit related causes of action. *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 422 N.E.2d 518, 522 (N.Y. 1981); *see also Fashion Boutique*, 314 F.3d at 59. Although "the gravamen of both are falsehoods published to third parties," statements constitute commercial defamation only when they "impugn[] the basic integrity or creditworthiness of a business." *Ruder & Finn*, 422 N.E.2d at 522. In contrast, statements that "denigrat[e] the quality of the business' goods or services . . . support an action for disparagement." *Id.* In deciding how to categorize a challenged statement, "New York courts have taken a relatively strict approach" such that if "the statements concern products or services at all, it is rare for a court to find that a claim for commercial defamation lies." *Jacobs v. Oppenheim*, No. 12 Civ. 7250, 2015 WL 5460104, at *8 (S.D.N.Y. June 17, 2015) (internal quotation marks omitted); *see, e.g.*, *De Marco-Stone Funeral Home Inc. v. WRGB Broad. Inc.*, 610 N.Y.S.2d 666, 667–69 (3rd Dep't 1994).

These two causes of action also have distinct pleading requirements. *Ruder & Finn*, 422 N.E.2d at 522. While "injury is conclusively presumed" for statements that give rise to defamation, a plaintiff alleging product disparagement must plead and ultimately prove "malice and special damages." *Id.*; *see also De Marco-Stone Funeral Home*, 610 N.Y.S.2d at 667–68. New York law requires that special damages "be pleaded with sufficient specificity." *DiSanto v. Forsyth*, 684 N.Y.S.2d 628, 629 (2nd Dep't 1999). "[G]eneral allegations of lost sales from unidentified lost customers are insufficient." *Id.*; *accord Emergency Enclosures, Inc. v. Nat'l Fire Adjustment Co.*, 893 N.Y.S.2d 414, 417 (4th Dep't 2009). Moreover, "[r]ound figures or a general allegation of a dollar amount . . . will not suffice." *Thai v. Cayre Grp., Ltd.*, 726 F.

12

Supp. 2d 323, 330 (S.D.N.Y. 2010) (quoting *Nunez v. A–T Fin. Info., Inc.*, 957 F.Supp. 438, 441 (S.D.N.Y. 1997)).  "The particularity requirement is strictly applied, as courts will dismiss defamation claims for failure to allege special damages with the requisite degree of specificity." *Id.* (citing *Emergency Enclosures*, 893 N.Y.S.2d at 417).

Here, the Counterclaims allege only product disparagement because the challenged statements concern the goods Dental Brands sells and the services it performs.  Dental Brands does not dispute that it failed to allege special damages.  The Counterclaims do not state any dollar amount and instead aver that Dental Brands' damages are "lost sales, profits and business opportunities, and harm to [Dental Brand's] business goodwill and reputation," as well as "the costs of litigation."  Dental Brands argues that Count Three as pleaded is nonetheless sufficient.  Quoting the Restatement (Second) of Torts, it argues that, under New York law, the particularity requirement as applied to a "lost sales" theory of special damages is "relaxed" because Dental Brands can show "with reasonable certainty" that a "[w]idely disseminated" misrepresentation caused "serious and genuine pecuniary loss by affecting the conduct of a number of persons whom the plaintiff is unable to identify and so depriving him of a market that he would otherwise have found."  Restatement Second of Torts § 633 cmt. h. (1977).

The Second Circuit rejected the same argument in *Bilinski v. Keith Haring Foundation, Inc.*, 632 F. App'x 637, 642 (2d Cir. 2015).  It reasoned that "the New York Court of Appeals has yet to adopt this theory of special damages" and, even if it such a theory was cognizable, the plaintiffs had "fail[ed] to meets its requirements."  *Id.*  The Second Circuit noted that "even under the loss-of-market theory, plaintiffs must do more than estimate damages."  *Id.*  It held that the plaintiffs have simply offered "generalized, round number[s] that [are] too speculative and conclusory to satisfy the requirement that special damages be stated in detail."  *Id.* at 643.

13

Count Three is dismissed because it claims generalized damages in a conclusory fashion. *See id.* Because the Counterclaim fails to state a claim for either commercial defamation or disparagement under New York law, Count Three is dismissed. In light of this holding, Dentsply's other arguments raised in support of its motion are not addressed.

## IV. CONCLUSION

For the foregoing reasons, Dentsply's motion to dismiss is GRANTED as to Count One and Count Three of the Counterclaims, but DENIED as to Count Two. The Clerk of Court is directed to close the motions at Dkt. Nos. 72, 84 and 89.

Dated: October 27, 2016
 New York, New York

                                                       **LORNA G. SCHOFIELD**
                                              **UNITED STATES DISTRICT JUDGE**

14