UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                                         :
DENTSPLY SIRONA, INC.,                                           :
                Plaintiff and                             :
                Counterclaim Defendant,  :         15 Civ. 8775 (LGS)
                                                                          :
        -against-                                      :          **OPINION AND**
                                                              :          **ORDER**
DENTAL BRANDS FOR LESS LLC,              :
                Defendant and                          :
                Counterclaim Plaintiff.    :
------------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Dentsply Sirona Inc. ("Dentsply") sues Defendant Dental Brands for Less d/b/a Dental Wholesale Direct ("Dental Brands") over Defendant's resale of Dentsply's dental products. On June 7, 2016, Defendant Dental Brands filed its Answer, Affirmative Defenses, and Counterclaims to the Second Amended Complaint ("Counterclaims"). Defendant's first counterclaim alleged that Plaintiff had violated the Sherman Antitrust Act, 15 U.S.C. § 1. On October 27, 2016, this counterclaim was dismissed for failure to allege an antitrust injury necessary to confer antitrust standing. *See Dentsply Int'l Inc. v. Dental Brands for Less LLC*, No. 15 Civ. 8775, 2016 WL 6310777 (S.D.N.Y. Oct. 27, 2016) (the "2016 Opinion"). Dental Brands now files a motion pursuant to Federal Rule of Civil Procedure 54(b) for reconsideration of this decision. For the following reasons, the motion is denied.

## I. BACKGROUND

### A. The 2016 Opinion

       The 2016 Opinion assumed the truth of the following facts, which are taken from the Counterclaims. *See id*. at *1-2. Dentsply manufactures dental supply products. Dentsply has authorized distributors to sell its products to dentists in the United States, and three of these

distributors are responsible for over 80% of the domestic retail sales of Dentsply products. Dental Brands is a discount dental products retailer. It sells Dentsply products in the United States, having acquired them overseas at lower prices, even though Dentsply did not authorize it to do so.

Dentsply's authorized distributors "agreed among themselves to sell Dentsply['s] [p]roducts to dentists at artificially high fixed prices" and brought Dentsply into their conspiracy to enforce this price fixing agreement. The horizontal price-fixing conspiracy is implemented in two ways. First, Dentsply engages in a "disinformation campaign" against Dental Brands and other unauthorized distributors through commercial advertising, print media, e-mails, trade shows and face-to-face meetings, all directed at dentists. Second, Dentsply threatens to and does file litigation "without regards for the merits but rather for the purpose of injuring" the unauthorized dealers. The price-fixing agreement is "coordinated" at dental-industry forums that have been "held since at least 2008." "With the participation of [the authorized distributors], the dental manufacturers[, including Dentsply,] discuss [at these forums] implementing global pricing strategies, tracking companies supplying discount dealers with the dental manufacturers' products and afterwards [refusing to supply the companies that supply these discount dealers]."

Based on these facts alleged in the Counterclaims, the Court dismissed Defendant's antitrust counterclaim. *See id*. at *2-4. The Court applied the *Gatt* "three-step process for determining whether a plaintiff has sufficiently alleged antitrust injury." *Id*. at *3 (quoting *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 76 (2d Cir. 2013). The decision described the three steps as follows:

> "First, the party asserting that it has been injured by an illegal anticompetitive practice must identify the practice complained of and the reasons such a practice is or might be anticompetitive." [*Gatt Commc'ns, Inc.*, 711 F.3d at 76] (internal quotation marks and alteration omitted). Second, courts "identify the actual injury

2

> the plaintiff alleges," i.e., "the ways in which the plaintiff claims it is in a worse position as a consequence of the defendant's conduct."  *Id.* (internal quotation marks omitted).  Third, courts compare the "anticompetitive effect of the specific practice at issue" to "the actual injury the plaintiff alleges."  *Id.* (internal quotation marks omitted).  "It is not enough for the actual injury to be causally linked to the asserted violation," but instead, "in order to establish antitrust injury, the plaintiff must demonstrate that its injury is of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."  *Id.* (internal quotation marks and alteration omitted).

*Id*.

Based on the Counterclaims, the 2016 Opinion observed that Dentsply's alleged anticompetitive practice was participating in a horizontal minimum price fixing conspiracy with Dentsply's authorized distributors.  *Id*.  For example, the Counterclaims allege that "Dentsply's authorized dealers ('Dentsply Cartel Members') conspired horizontally to fix artificially high price levels at which to sell Dentsply Products . . . ."  The Counterclaims further allege, "[t]his case involves a nationwide agreement, in part, by Dentsply and Dentsply Cartel Members, first, not to compete on price so as to be able to charge dentists supra-competitive prices for Dentsply Products."  The 2016 Opinion also observed that Dental Brands' alleged injury was not Dental Brands' paying supracompetitive prices, but rather was (1) lost business due to Dentsply's misrepresentations and (2) costs attributable to litigation.  *Id*.  The Counterclaims allege, "Dentsply's conspiracy has caused Dental Brands for Less antitrust injury in the form of lost business because of misrepresentations it makes to dentists that the Dentsply products it sells at discount are not suitable and litigation costs attributable [to] defending 'sham' litigation brought by Dentsply against it."

The 2016 Opinion holds that Defendant lacks antitrust standing because its injury was not the type that the antitrust laws were intended to prevent, even though it flowed from Plaintiff's alleged bad acts.  *See id.*  ("Assuming *arguendo* that the [Defendant] adequately allege[s] the

3

existence of a price-fixing agreement, [it] still fail[s] to state a claim because Dental Brands' alleged injury does not flow from the anticompetitive impact that the antitrust laws were designed to prevent."). Specifically, the 2016 Opinion explains:

> Minimum price-fixing schemes are unlawful because they can force *purchasers* of a product to pay supracompetitive prices. *Gatt Commc'ns*, 711 F.3d at 77. Dental Brands is a competitor of the alleged price fixers and "has not been forced to pay higher prices for a product." *Id*. As the Supreme Court has made clear, a competitor cannot "recover damages for any conspiracy by [antitrust defendants] to charge higher than competitive prices in the American market. Such conduct would indeed violate the Sherman Act, . . . but it could not injure [plaintiffs]; as [defendants'] competitors, [plaintiffs] stand to gain from any conspiracy to raise the market price . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582-83 (1986) (internal citations omitted). Dental Brands, as a competitor, "may not complain of conspiracies that . . . set minimum prices at *any* level," *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 337 (quoting *Matsushita*, 475 U.S. at 585 n.8), because such a conspiracy would enable Dental Brands also to charge higher than competitive prices.

*Id*. The 2016 Opinion states that Defendant's alleged injuries were caused "by acts that are independent of the [alleged price-fixing] agreement." *Id*. at *4. "Dental Brands' alleged injuries -- lost business and litigation costs" -- the opinion concluded, "may be injuries caused by Dentsply and associated with the alleged price fixing, but they are not antitrust injuries. Dental Brands' injuries do not flow from anticompetitive conduct and are caused by independent wrongs, such as misstatements. Dental Brands has failed to allege facts sufficient to show that these damages are the types of injuries the antitrust laws were designed to prevent." *Id*.

### B. *IQ Dental Supply, Inc.*

On May 10, 2019, in another case, the Second Circuit affirmed the District Court's holding that the plaintiff lacked antitrust standing to challenge the defendants' boycott of third parties through which the plaintiff conducted its business. *See IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F.3d 57, 60 (2d Cir. 2019). But the Second Circuit reversed the District Court's holding that the plaintiff lacked antitrust standing to challenge the direct boycott of the plaintiff's

4

own business. *Id.* While the plaintiff, IQ Dental Supply, Inc. ("IQ"), also alleged that the defendants had engaged in a price-fixing conspiracy, that issue was not part of the appeal. *Id*. at 61. A footnote added that "[t]he district court dismissed IQ's price-fixing claims because competitors cannot claim injury from supracompetitive prices." *Id*. at 63 n.2.

The Second Circuit determined that IQ had sufficiently alleged an antitrust injury from the direct boycott based on the three-part *Gatt* test. *Id*. at 62-65. But as to the second prong -- the plaintiff's actual injury -- the court distinguished IQ from plaintiffs in cases where courts denied antitrust standing to a competitor that benefitted from supracompetitive pricing that the antitrust conspiracy had produced. *Id*. at 64 (citing *Matsushita*, 475 U.S. at 583 (1986), *MacPherson's Inc. v. Windermere Real Estate Servs. Co.*, 100 F. App'x 651, 654 (9th Cir. 2004) and *Sprint Nextel Corp. v. AT&T Inc.*, 821 F. Supp. 2d 308, 319-20 (D.D.C. 2011)).

The Second Circuit then addressed whether IQ was an "efficient enforcer" of the antitrust laws, which is also a necessary step to establish antitrust standing. *Id*. at 65-68. The Second Circuit held that IQ was not an efficient enforcer to challenge the boycotts of the third parties, *see id*. at 65-67, but that IQ was an efficient enforcer to challenge the boycotts of its own business. *Id*. at 67-68. The court found that IQ's injury with respect to the direct boycotts was "neither indirect nor derivative" and that IQ was "the most-motivated plaintiff" to challenge these acts. *Id*. at 68. In reaching this decision, the Second Circuit rejected an argument that the direct boycott allegations failed to allege joint conduct. *Id.* It explained that these acts were alleged as part of the defendants' "vast and multipronged attack on [the third parties and dental companies, including IQ]. In other words, IQ ha[d] not alleged that it ha[d] suffered an antitrust injury from the [d]efendants' direct boycott in isolation. . . . IQ ha[d] alleged that the

5

[d]efendants, as part of their elaborate and extensive scheme to force [third parties] out of business, exerted pressure on some of IQ's suppliers to boycott IQ." *Id.*

## II.    STANDARD

A court's non-final order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Rule 54(b) is applicable here because the 2016 Opinion's dismissal of Defendant's antitrust counterclaim was a non-final order and judgment has not been entered. A party seeking relief under Rule 54(b) must do so "within the strictures of the law of the case doctrine." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992); *accord Marshall v. Annucci*, No. 18 Civ. 6673, 2020 WL 2904850, at *1 (S.D.N.Y. June 3, 2020).

"The doctrine of the law of the case posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) (quotation marks omitted); *accord Novick v. AXA Network, LLC*, 714 Fed. App'x 22, 24-25 (2d Cir. 2017) (summary order). "Although not binding, the doctrine counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 736 F.3d 198, 208 (2d Cir. 2013) (quotation marks omitted); *accord Reches v. Morgan Stanley & Co. LLC*, 736 Fed. App'x 306, 307 (2d Cir. 2018) (summary order). The law-of-the-case doctrine is "driven by considerations of fairness to the parties, judicial economy, and the societal interest in finality." *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009); *accord Tomasino v. Estee Lauder Cos, Inc.*, No. 13 Civ. 4692, 2015 WL 1470177, at *1 (E.D.N.Y. Mar. 31, 2015).

6

### III. DISCUSSION

Defendant appears to argue that the Court should reconsider and revise its dismissal of the antitrust counterclaim for two reasons -- first, that *IQ Dental Supply, Inc.* made a change in controlling law that militates against the law of the case doctrine; and second, that the 2016 Opinion fails to identify the correct antitrust violation and antitrust injury, and therefore the Court should reconsider its dismissal to prevent manifest injustice. Both arguments are mistaken.

*IQ Dental Supply, Inc.* does not change controlling law, nor does it compel the conclusion that Dental Brands has antitrust standing. The 2016 Opinion held that Dental Brands does not have antitrust standing because the Counterclaims fail to allege that Plaintiff's anticompetitive conduct caused Dental Brands an "injury [that] is of the type the antitrust laws were intended to prevent." *Dentsply Int'l Inc.*, 2016 WL 6310777, at *3 (quoting *Gatt Commc'ns, Inc.*, 711 F.3d at 76). "Minimum price-fixing schemes are unlawful because they can force *purchasers* of a product to pay supracompetitive prices," the opinion stated, and "Dental Brands is a competitor of the alleged price fixers and 'has not been forced to pay higher prices for a product.'" *Id*. (quoting *Gatt Commc'ns*, *Inc.*, 711 F.3d at 77). Nothing in *IQ Dental Supply Inc.* changes this rule of law. The Second Circuit relied on the same *Gatt* test and did not change the law regarding whether a competitor can bring an antitrust claim alleging a minimum price fixing scheme. Indeed, the Second Circuit noted in a footnote that IQ's price-fixing claims had been dismissed "because competitors cannot claim injury from supracompetitive prices." *IQ Dental Supply, Inc.*, 924 F.3d at 63 n.2.

Contrary to Defendant's argument, reconsideration of how the 2016 Opinion defines the alleged antitrust violation and injury is unnecessary to prevent manifest injustice. The 2016

Opinion defines Dentsply's antitrust violation precisely as the Counterclaims did, as is required on a Rule 12(b)(6) motion to dismiss for failure to state a claim.  The Counterclaims repeatedly allege a horizontal price fixing conspiracy among Dentsply's authorized dealers to protect their supracompetitive profits, with Dentsply's role as a co-conspirator to eliminate discount dealers, such as Dental Brands, to further the price fixing conspiracy.  Defendant now, almost four years after the 2016 Opinion, argues that that the antitrust violation is not price-fixing, but Dentsply's "overarching market-exclusion conspiracy to *eliminate* Dental Brands . . . and other discounters' competition so to control the market."  That is not the antitrust violation alleged in the Counterclaims.  Dentsply's exclusionary conduct -- consisting of misrepresentations and sham litigation -- is alleged to be merely an act in furtherance of the price fixing conspiracy.  Relatedly, Dental Brands now argues that the antitrust injury is not lost business and litigation costs, but being made worse-off due to Dentsply's distortion of the dental supply market.  This is also contrary to what the Counterclaims allege.

There is no legal basis to amend the 2016 Opinion, nor is amendment required to prevent manifest injustice.  To the contrary, it would be unjust and highly prejudicial to Plaintiff to introduce a new counterclaim now, when fact discovery has been completed, Defendant's motion for summary judgment on the merits has been briefed and decided, and all that remains is the completion of damages discovery and any related motion.

### IV. CONCLUSION

For the reasons herein, Defendant's motion pursuant to Rule 54(b) is denied.  The Court of Clerk is respectfully directed to close docket no. 404.

Dated: July 17, 2020
New York, New York

LORNA G. SCHOFIELD
**UNITED STATES DISTRICT JUDGE**

8